## GARCIA v. TEXAS MEXICAN RY. CO.
### No. 8473.

Court of Civil Appeals of Texas. San Antonio.
Oct. 22, 1930.

Rehearing Denied Nov. 19, 1930.

Lloyd & Lloyd, of Alice, for appellant.

Asher R. Smith, of Laredo, and Marshall Hicks and J. D. Dodson, both of San Antonio, for appellee.

COBBS, J.

Appellant sued appellee for alleged injuries resulting to him by reason of his falling into a hole or ditch allowed by appellee to remain on its right of way. He alleged that such fall caused him to be thrown under the train, which started at the moment he fell and ran over and cut off a portion of his hand. He prayed for damages in the sum of $10,000 for his injuries.

In his petition appellant alleges that he went to appellee's passenger depot on the night of November 14, 1929, about ten minutes before 9 o'clock, the scheduled time for the arrival of appellee's passenger train, for the purpose of going to Alice, Tex. He inquired of appellee's employee at the depot the time of the train's arrival, and he negligently told him it was forty minutes late, when in fact it was only ten or twelve minutes late; but, relying upon such information, he told the employee of appellee that he was going to the home of his uncle, about five blocks away, for the purpose of "killing time." When he reached his uncle's house, he heard the train whistle, and thereupon started running to said depot in order to catch the train. When he reached the railroad, the train had blocked the street to the depot and he was compelled to go around the rear end of the train in order to get on, and in his effort to get around he had to run along the side of the train, and in doing so he stumbled and fell into a ditch or hole on appellee's right of way and received the injuries complained of.

Appellee generally denied the allegations, and said that it maintained a depot in a safe condition for the accommodation of persons intending to become passengers on its trains, and, if appellant was injured at the time and in the manner alleged, he was not at the place where he was injured either at the invitation or with the knowledge of appellee; that he voluntarily left its said depot for his own convenience, and knew the danger of attempting to get on said train under the circumstances; that he was a licensee only, and that appellee owed him no duty whatever, and that appellant was guilty of contributory negligence.

From the view we take of this case, the appellant was not a passenger on the train, and appellee owed him no duty whatever as such.

At the depot appellant made inquiries as to the arrival of the train, and was advised that it was late, about forty minutes; he then left the depot.

On direct examination appellant testified:

"I allege in my petition that I was hurt about the 14th day of November, 1929; that date is correct, I remember that occasion; I was hurt in the night time.

"I had started to Alice where I was at work; I was going on the train of the Texas Mexican Railroad Company, the defendant in this case; I was going on the passenger train. I went to the depot of the Texas Mexican Railway Company that night; I was at the depot at ten minutes to nine to wait for the train; the train was supposed to leave here at nine o'clock.

"I had a conversation with some one there with reference to the time the train would leave; I had the conversation with Pedro Gallegos and Romualdo Garza; he is employed by the railroad company, works at the depot. He told me I was going to be there a long time because the train was forty minutes late. I know Raul Puig; he works at the depot, he is telegraph operator; he was present when this conversation took place.

"After this conversation took place I told them I was going to Manuel Garcia's residence to kill time because they told me the train was forty minutes late and I started to Garcia's

residence. Bernabe Elizando was present also; the two railroad employees were also present.

"I did not get to the home of my Uncle Manuel Garcia, I was about a block this side of his house and I heard the train whistle and I turned and ran back. I was about five blocks from the depot when I heard the train whistle. When I heard the train whistle I ran back to try to catch the train.

"It was about five minutes to nine when I had this conversation with these employees of the railroad about when the train would leave. I left about nine o'clock because I saw the clock, I was going over there and I wanted to know the exact time, I didn't want to miss that train because I was working at Alice."

On cross-examination he further stated:

"I have lived in San Diego all my life; I am thirty-four years old. I was working in Alice but I lived here. I had been working in Alice four months when the accident happened. I had been in the habit of traveling back and forth on the train, I come to see my folks here."

On redirect examination appellant testified:

"I was going to Alice that night because I was working there; I had been going to Alice on the train frequently. If they hadn't told me that the train was forty minutes late, I would have stayed at the station, I wouldn't have left."

It is not shown that appellant talked with the ticket agent or purchased any ticket. In view of the fact of the instructed verdict, we wish to have all the facts fully stated. In connection with his fall, appellant testified:

"I walked five blocks and heard the train whistle, and when I heard the whistle of the train blow I started back running trying to catch the train and I got to where the train was stopped and I tried to go around the Pullman and fell in a little hole there and I fell under the train and when I fell the engine pulled and caught my right hand; the train jerked, at the time I hit the ground the engine pulled.

"When I fell I fell hard, I was running; it hurt me when I fell, jarred me. My head got under the train; I got this hand out but I didn't have time to get this hand out because the engine pulled.

"Where I fell was on the railroad right-of-way. I fell on account of the hole near the track there; I guess it was about three yards or four from the track. When I fell I fell towards the track, to the left. That hole was on the railroad right of way. That was the Texas Mexican Railroad.

"I think the hole was about fifteen inches deep, sixteen, something like that, and about a yard or more long and the same in width. This hole and where I fell was about half a block from the depot, maybe a little less, I couldn't tell exactly.

"When I saw the train there and started running up to it, I didn't see any lights or signals of any kind around that hole or depression; I don't know whether there was any there or not, I didn't see them. It was dark. There was nobody there to tell me there was a hole there; nobody told me there was a hole there before I went up there."

He also testified:

"I suppose it took me about fifteen or twenty minutes to walk that five blocks from the time I left until I heard the whistle of the train."

On cross-examination he stated:

"My idea was that I would run around the back end of the train and come up on the depot side where the people get on and off all the time, that is what I intended to do.

"I don't know how many coaches were on the train that night, I didn't count the coaches; but the train was of sufficient length that in order to go around it I had to go down on the west side of that street and come around the end of the train to get on the train where the depot was; it was closer to go around the Pullman than it was to go around the engine; I could have made it if I didn't fall. I went the way I started to go because that was the nearest, it was nearest than to go around the engine."

He further testified:

"When I got close to the train standing on the track, I had to leave the street in order to try to go around it. * * *

"It was the Pullman, the last coach, that mashed my hand; it was the end of the car that mashed my hand because I could have had time if the train would have stayed one minute more I could have made it; I think the last two wheels of the Pullman hurt me."

He said:

"The reason I didn't get on the train on the north side instead of trying to run around it to the south side was because that door was closed, I couldn't get on that way. * * * "

Appellant did not show that he talked with any one connected with selling tickets or in control of the train or any of its operations. Certainly neither the engineer nor conductor were so advised. The appellant at the time of his injury was off from the train, and was not on the side where passengers were supposed to get on.

We have carefully read and considered every case cited by appellant, and they all show that the party was either a passenger on the train or had a ticket, or that the company owed him some duty. So far as the proof in this case is concerned, appellant was nothing more than a licensee, off from the train, running on the wrong side, and was

guilty of such contributory negligence as precludes any recovery whatever. We understand from the testimony, as contended by appellee, that appellant received his injuries in the dark and on appellee's right of way, but not at the depot, nor upon its platform, which appellant knew was maintained for the use and protection of passengers; second, that there is no evidence that any employee of appellee knew that appellant was upon the right of way until after he was injured and the train had departed; third, that there is no evidence that appellant was invited by appellee to be at the place he was when he was injured.

The authorities cited uniformly and unmistakably announce the rule of law to be, in the circumstances presented by the undisputed testimony of appellant, first, that appellee owed appellant no duty at the time and place he was injured other than to not willfully injure him; second, that, not knowing of his presence at said time and place, there is nothing to support a finding of willful injury; third, that appellant's own act was negligence and proximate cause of his own injury.

We have carefully examined the record of this case and the assignments, and can find no grounds to justify a judgment against the appellee, and, so believing, overrule all the assignments and affirm the judgment.